UNITED STATES DISTRICT COURT
                                CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADINA A., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, <br><br> Defendant. | Case No. SA CV 16-2288-SP <br><br><br> MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On December 30, 2016, plaintiff Madina A. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the

Administrative Law Judge ("ALJ") properly considered the opinion of an examining physician, Dr. Harlan Bleecker, an orthopedist; and (2) whether the ALJ properly considered the opinion of another examining physician, Dr. Lorna Carlin, a psychiatrist. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-9; Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-9.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to properly consider a portion of Dr. Bleecker's opinion, but such error was harmless, and the ALJ did properly consider Dr. Carlin's opinion, although there too any error was harmless. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-nine years old on the alleged disability onset date, is a high school graduate who completed two years of college. AR at 53, 67. Plaintiff has past relevant work as a salesperson. *Id*. at 255.

On May 29, 2013, plaintiff filed an application for a period of disability and DIB, alleging an onset date of January 1, 2012 due to a spinal disorder, severe back pain, and knee pain. *Id*. at 67. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 97-109.

On April 7, 2015, plaintiff, represented by a non-legal advocate, appeared and testified at a hearing before the ALJ. *Id*. at 44-66; *see also id.* at 109, 195. The ALJ also heard testimony from Dr. Arnold Ostrow, a medical expert, and Alan Ey, a vocational expert. *Id*. at 47-51, 61-62. On April 29, 2015, the ALJ denied

plaintiff's claim for benefits. *Id*. at 29-39.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity from January 1, 2012, the alleged onset date, through December 31, 2013, the date last insured. *Id*. at 31.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease of the thoracic spine and lumbar spine; early degenerative changes of the left ring finger; hypertension; obesity; and fibromyalgia. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id*. at 33.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the RFC to: lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb stairs, bend, balance, stoop, kneel, crouch, crawl, and operate foot pedals bilaterally; and frequently perform gross and fine manipulation with the left upper extremity. *Id*. The ALJ precluded plaintiff from ladders, ropes, scaffolding, and working at unprotected heights. *Id*.

The ALJ found, at step four, that plaintiff was able to perform her past relevant work as a salesperson. *Id*. at 39. Consequently, the ALJ concluded

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that

of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ's Rejection of Dr. Bleecker's Reaching Opinion Was Harmless Error

Plaintiff contends the ALJ failed to properly consider the opinion of Dr. Harlan Bleecker, a consultative orthopedist. P. Mem. at 3-7. Specifically, plaintiff argues the ALJ improperly rejected Dr. Bleecker's opinion that plaintiff could only occasionally reach at or above her shoulder level with both arms without providing specific and legitimate reasons. *See id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.157(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

Nonetheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. Physicians' Findings

During the alleged period of disability, plaintiff was treated by multiple physicians. Only those relevant to the issue in dispute will be discussed here.

X-rays from a November 17, 2012 emergency room visit showed plaintiff had multilevel degenerative disc disease. AR at 269. The ER prescribed plaintiff oxycodone and valium but plaintiff was scared of taking narcotics. *See id.* at 270, 323, 329.

Dr. Catou Greenberg, plaintiff's treating internist, referred plaintiff to an orthopedic specialist, Dr. Balaji Charlu, to examine plaintiff's back pain. *See id.* at 323-24. Wendy Delgado, a physician's assistant, performed the initial examination under Dr. Charlu's supervision. *See id.* at 324. P.A. Delgado observed plaintiff had pain upon rotation, flexion, and range of motion in the neck and lumbar spine with some pain. *Id*. Based on the examination, history, and x-rays, Dr. Charlu opined plaintiff had thoracic pain, myofascial pain, thoracic spasms, mechanical thoracic pain, and multilevel degenerative disc disease, and

ordered physical therapy, muscle relaxants, anti-inflammatories, and a lumbar soft corset. *Id*.

Dr. Bleecker, an orthopedic surgeon, examined plaintiff on September 24, 2013, but did not review any medical records. AR at 425-29. Plaintiff reported to Dr. Bleecker that she had an MRI showing degenerative disc disease through her thoracic and lumbar spine. *See id*. at 425. Dr. Bleecker observed plaintiff had, among other things, a normal gait, reduced range of motion in the neck and back, a negative straight-leg raising test, and normal range of motion in the upper extremities. *See id*. at 426-27. Based on the examination, Dr. Bleecker diagnosed plaintiff with degenerative disc disease, degenerative arthritis thoracic spine and lumbar spine. *Id*. at 428. Dr. Bleecker opined plaintiff could: sit six hours in an eight-hour day; stand and walk six hours in an eight-hour day; lift twenty pounds occasionally and ten pounds frequently; and only occasionally reach at or above the level of the shoulder joint with either upper extremity, since this entails extension of the thoracic spine. *Id*.

Dr. Arnold Ostrow, an internist and pulmonologist, reviewed plaintiff's medical records and testified as a medical expert at the hearing. *Id*. at 47-51. Dr. Ostrow opined plaintiff suffered from lumbral sacral degenerative disc disease, thoracic spine degenerative disease, early degenerative changes of the ring finger and left hand, hypertension, obesity, and fibromyalgia. *Id*. at 48. Based on a review of the records, Dr. Ostrow opined plaintiff had the RFC to: lift twenty pounds occasionally and ten pounds frequently; stand and walk for six hours; sit for six hours; frequently use fingers of the left upper extremity for gripping, handling, and fingering; occasionally use foot pedals bilaterally; and occasionally climb stairs. *Id*. at 49. Dr. Ostrow also limited plaintiff to occasional postural activities and precluded plaintiff from working at unprotected heights and from ropes, ladders, and scaffolds. *Id*.

## 2. **The ALJ's Findings**

In reaching his RFC determination, the ALJ adopted Dr. Ostrow's opinion in its entirety. *See id*. at 33, 37-38. The ALJ noted that Dr. Bleecker's opinion was consistent with the evidence, but so as to give plaintiff all reasonable consideration, gave Dr. Bleecker's opinion less weight and instead adopted a more restrictive RFC. *See id*. at 38.

Plaintiff contends that Dr. Bleecker's reaching limitation was more restrictive than the ALJ's adopted left upper extremity limitations, and thus the ALJ's reason for rejecting Dr. Bleecker's reaching limitation was not specific and legitimate. *See* P. Mem. at 4-5. The court agrees. Although the ALJ correctly identified Dr. Ostrow's opined limitations as more restrictive on the whole than Dr. Bleecker's limitations, Dr. Bleecker's upper extremity limitation was more restrictive than Dr. Ostrow's. Dr. Ostrow only limited the left upper extremity to frequent use of the left fingers and hand and did not opine any reaching limitation, while Dr. Bleecker limited both upper extremities to occasional reaching at or above the shoulder level. *Compare* AR at 49 and 428. Because the ALJ found that Dr. Bleecker's opinion was consistent with the evidence and purported to want to reach the most restrictive RFC determination, his reasoning for rejecting Dr. Bleecker's reaching limitation was not supported by substantial evidence.

Nevertheless, this error was harmless. At the hearing, in response to a hypothetical as to whether a person with the RFC determined by the ALJ, plus a limitation to occasional overhead or over the shoulder reaching, could still perform plaintiff's past relevant work as a salesperson, the vocational expert ("VE") responded in the affirmative. *Id*. at 62. Thus, had the ALJ adopted Dr. Bleecker's reaching limitation, plaintiff still would have been found not disabled.

Plaintiff suggests the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT"), which defines the job of salesperson as requiring

8

frequent reaching. P. Mem. at 5; *see* DOT 261.357-074. In *Gutierrez v. Colvin*, 844 F.3d 804 (9th Cir. 2016), the Ninth Circuit considered whether a VE's testimony that a person with an overhead reaching limitation could work as a cashier conflicted with the DOT, and found that for a conflict with the DOT to be apparent, the VE's testimony must be at odds with the essential, integral, or expected requirements of a job. *Id*. at 808. Recognizing that "not every job that involves reaching requires the ability to reach overhead," the Ninth Circuit looked at the typical duties of a cashier set forth by the DOT and applied common knowledge of the job to conclude there was no apparent conflict with the DOT in that instance. *Id*.

Plaintiff argues that although cashiering may not require reaching overhead, a salesperson could be expected to do "an appreciable amount of reaching at or above shoulder level" for merchandise and in stocking or restocking items. P. Mem. at 6-7. But while a salesperson might be expected to reach at or above shoulder level more frequently than a cashier, as defendant points out, even Dr. Bleecker opined plaintiff could do this occasionally, i.e., up to a third of the time. The DOT description of the job as involving advising customers, answering questions, packing and wrapping purchases, checking merchandise deliveries, ticketing merchandise, stocking inventory, and posting sales onto inventory sheets indicates the vast majority of the reaching would not be at or above shoulder level. DOT 261.357-074. Likewise, common knowledge of the salesperson position suggests that, while the position may require frequent reaching, most of that reaching generally would not be at or above shoulder level.

Moreover, even if the VE's testimony that plaintiff could perform her past relevant work as it is generally performed could be deemed inconsistent with the DOT, the VE also testified a person limited to occasional over the shoulder reaching could perform plaintiff's past relevant work as she actually performed it

9

as well. AR at 61, 62. Plaintiff notes that the VE only testified a person limited to occasional "over the shoulder" reaching could do her past work, but did not consider a person also limited to only occasional reaching *at* shoulder level. P. Mem. at 7 n.1. The difference between at and above shoulder level reaching is minimal, and again, Dr. Bleecker did not preclude plaintiff from all such reaching, but simply limited her to doing such reaching occasionally. There is nothing in the record to suggest plaintiff's past relevant work involved more than occasional at or above shoulder level reaching, and the VE's testimony supports this.

Accordingly, while the ALJ's reason for rejecting Dr. Bleecker's reaching limitation was not specific and legitimate, his error was harmless.

**B. The ALJ Properly Considered the Opinion of the Examining Psychiatrist**

Plaintiff argues that the ALJ failed to properly consider Dr. Carlin's opinion. P. Mem. at 7-9. Specifically, plaintiff contends the ALJ failed to consider the combination of plaintiff's pain and anxiety. *Id*. Plaintiff somewhat unclearly argues the ALJ effectively rejected the portion of Dr. Carlin's opinion that states plaintiff's mental limitations could be increased by pain, and so consequently erred in determining plaintiff did not have a severe mental impairment or in failing to account for such limitations in his RFC determination.

Dr. Lorna Carlin, a psychiatrist, examined plaintiff on September 18, 2013. *Id*. at 415-21. Dr. Carlin did not review any medical records. *See id*. at 415. During the examination, plaintiff reported that she did not feel that she had any mental or emotional problems, but was under a lot of stress due to her pain. *See id*. Dr. Carlin observed that plaintiff was cooperative, coherent, organized, alert, and had intact judgment. *Id*. at 417, 419-20. Dr. Carlin diagnosed plaintiff with anxiety disorder, not otherwise specified, and psychosocial stressors during the past year, moderate to severe. *Id*. at 420. Dr. Carlin opined plaintiff was

functioning well with her physical limitations and that her condition may improve in the next twelve months because she was still responding to her mother's death and her divorce. *Id*. From a functional perspective, Dr. Carlin opined plaintiff was mildly limited in her ability to (1) maintain concentration and attention, persistence, and pace, and (2) maintain regular attendance in the workplace and perform work activities on a consistent basis, and was otherwise not significantly limited. *Id*. at 420-21. With regard to plaintiff's ability to maintain concentration and attention, persistence, and pace, Dr. Carlin noted the limitation could become more significant when plaintiff's pain is great. *Id*. at 421. As for plaintiff's ability to maintain regular attendance and perform work activities consistently, Dr. Carlin opined it required consideration of her physical limitations. *Id*.

In determining that plaintiff did not have a severe mental impairment or functional limitations resulting from the mental impairment, the ALJ expressly gave great weight to Dr. Carlin's opinion. *Id.* at 32, 38. As discussed above, the ALJ did consider plaintiff's physical limitations, and there is no basis to find the ALJ ignored the portion of Dr. Carlin's opinion stating such consideration was required. Plaintiff does not appear to argue this, but instead argues the ALJ did not account for the effect plaintiff's pain might have had on her mental limitations.

Although the ALJ did not directly address Dr. Carlin's opinion regarding the possibility of plaintiff's pain affecting the severity of her mental limitations, the ALJ discussed plaintiff's pain in the decision. The ALJ found plaintiff's statements concerning her symptoms and limitations were not fully credible. *See id*. at 37. The ALJ noted that, for the relevant period, plaintiff only sought treatment for pain twice, had mild findings, and was treated conservatively. *See id*. at 35. Because the ALJ did not find that plaintiff's allegations of pain were fully credible or instances of changes in her physical limitations, it would be reasonable for the ALJ to conclude the pain did not have a significant effect on

plaintiff's mild mental limitations during the relevant period. Put another way, since the ALJ did not find plaintiff suffered from significant pain, Dr. Carlin's opinion that great pain could increase her mental limitations was not implicated.

Thus, the ALJ properly considered Dr. Carlin's opinion. And even if the ALJ had erred by failing to explicitly discuss the effects of plaintiff's pain on her mental impairment, such error would be harmless since the ALJ found plaintiff's pain allegations were not fully credible.[3]

## V.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: March 18, 2019

SHERI PYM
United States Magistrate Judge

---

[3] Moreover, Dr. Carlin did not opine that plaintiff's limitation would last twelve months. *See* 42 U.S.C. 423(d)(1)(A).

12